**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel. JASON R. ELLSWORTH, and R. GRANT SMITH,**<br><br>        **Plaintiffs,**<br><br>**vs.**<br><br>**UNITED BUSINESS BROKERS OF UTAH, LLC, et al.,**<br><br>        **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No.  2:09CV353DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Defendants' Motion to Dismiss.  The court held a hearing on the motion on December 1, 2010.  At the hearing, Plaintiffs were represented by Justin D. Heideman, and Defendants were represented by Alain C. Balmanno and Geoffrey C. Haslam.  The court took the motion under advisement.  The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Because this is a motion to dismiss, the court takes the following statement of facts from the Plaintiffs' Verified Complaint.  Plaintiff Jason Ellsworth worked for Defendants from August 2005 to September 1, 2008 as a Research Analyst under the terms of an employment agreement.

In a letter dated September 1, 2008, Michael Drury, a principal of Defendants, terminated Ellsworth's employment on behalf of UBB Inc., UMA1, UMA LLC, UMA Inc., and UMAC Inc. Ellsworth alleges that he was not paid properly under the terms of the agreement and that he was not notified of the termination properly. Plaintiff Grant Smith also worked for Defendants as a Research Analyst under the terms of an employment agreement. Smith makes similar allegations regarding a breach of the employment agreement.

With respect to tax fraud allegations, both Plaintiffs assert that they were hired as regular employees not independent contractors. Plaintiffs state that Defendants withheld taxes from their paychecks but did not report all of the tax withholdings. Plaintiffs allege that as a common practice, Defendants purposefully avoided paying payroll and corporate taxes. Defendants allegedly reported some of the income of their employees, such as commissions, as 1099 income. Plaintiffs argue that this increased their tax burden. Plaintiffs state that for 2005 and 2006 they were paid their salary of $2000 per month as regular employees, but their commissions as 1099 income.

Plaintiffs also claim that Defendants occasionally paid Ellsworth and Smith by writing a check without accounting for any applicable withholdings instead of processing the payment through their paycheck company. Plaintiffs further assert that principals of Defendants routinely ran personal expenses through their companies to avoid taxes by treating their personal expenses as business expenses.

In addition to the alleged tax fraud, Plaintiffs allege with respect to their qui tam action that Defendants instructed employees how to get around SBA requirements. Plaintiffs claim that Defendant Maher's nephew-in-law was a loan officer to whom Maher submitted falsified SBA

loan applications. Plaintiffs allege that Maher informed employees that the SBA guidelines "are bogus and don't matter." Plaintiffs assert that when one UBB employee raised concerns about the approach to a particular loan application, Maher responded that what he had done was nothing compared to what he and Defendant Drury did on SBA loans.

On one specific deal, referred to by Plaintiffs as the Heber Ranch deal, Plaintiffs allege that Defendant Phillips presented intentionally misleading financial statements for an SBA loan. The financials for the deal were initially prepared by Ellsworth. But Plaintiffs allege that prior to the financials being processed, Phillips retrieved the financials and changed the entire packet to manipulate the deal and push it to close. Before the Heber Ranch deal closed, Defendants allegedly prohibited Ellsworth from talking to the bank. Plaintiffs allege that Phillips was paid $30,000 for her work on the Heber Ranch deal.

Plaintiffs allege more generally that Phillips prepared and issued financial statements for companies in transactions which she received financial benefit contingent upon United consummating a sale of the company. Phillips allegedly prepared these financial statements from an entity named "Phillips Company" in an effort to appear outside of United Business Brokers/United Mergers & Acquisitions. Also, Plaintiffs claims that Phillips practiced law without a law degree by drafting backdated corporate minutes and other corporate documents.

Furthermore, Plaintiffs claim that Phillips asked Ellsworth to forge or falsify information on numerous occasions, but he refused. Drury informed Plaintiffs that falsifying records is just part of the deal making process and everyone did it. Defendants routinely misrepresented information to the SBA, presented false or fraudulent claims for payment and distribution of funds to the SBA, and knowingly made and used false records or statements to get SBA funds.

Plaintiffs also claim that Defendants engaged in "two document closings," in which two sets of documents were prepared to close a deal. Allegedly, one set was to satisfy the SBA and the other set was to reflect the actual closing of the deal. Plaintiffs state that an example of this type of closing was the Ink Jet deal. In that closing, $25,000 was allegedly paid to the seller outside of the closing.

Smith asserts that Drury and Phillips asked him to study corporate record keeping requirements in order to reproduce necessary documents as if they had been created at various times in the past. In one case, Defendants' client engaged legal counsel to produce a "catch-up" document for all corporate actions of the past 10 years. Drury and Phillips discarded this catch-up document and instead created false records with false dates for the client to sign. In creating these false documents, Defendants attempted to find paper that closely resembled that of authentic corporate records so the records looked consistent. Defendants also created stock certificates and stock ledgers to appear as though they had been kept current by the subject company.

For one transaction, Drury and Phillips expressed dissatisfaction with Smith's work because he was not a team player and because he tried to ruin a deal with a request for indemnification. Smith was only paid a commission of $10,000 for a transaction whereas members of the team had been promised that nobody would make less than $100,000 when the deal closed. The other team members received commissions of between $60,000 and $300,000.

## DISCUSSION

Defendants move to dismiss Plaintiffs Jason R. Ellsworth and R. Grant Smith's Sixth Cause of Action, entitled "Private Attorney General–Tax Fraud," and Seventh Cause of Action,

entitled "Qui Tam – False Claims Act."  Because those causes of action are the only federal causes of action, Defendants ask the court to decline to exercise supplemental jurisdiction over the remaining state law causes of action and dismiss those causes of action without prejudice.

## I.    SIXTH CAUSE OF ACTION

Defendants move to dismiss Plaintiffs' Sixth Cause of Action which brings a private attorney general claim for tax fraud.  The legislative scheme of the Internal Revenue Code "does not indicate that Congress intended to enforce these tax laws by providing civil causes of action or authorizing private attorneys general." *Turner v. Unification Church*, 473 F. Supp. 367, 377 (D. R.I. 1978).  Because there is no intent evidenced in the tax code to create private rights of action and Plaintiffs are not members of the class for whose benefit the statute was enacted, Defendants argue that Plaintiffs cannot maintain their Sixth Cause of Action.  At the hearing on this motion, Plaintiffs conceded that they had no private cause of action.  The court, therefore, dismisses the Sixth Cause of Action.

## II.  SEVENTH CAUSE OF ACTION

Plaintiffs' Seventh Cause of Action is a qui tam action under the False Claims Act ("FCA").  Defendants argue that the Plaintiffs have not pleaded their claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Because FCA claims involve averments of fraud, they are held to the heightened pleading standards in Rule 9(b).  *United States ex rel. Sikkenga v. Regence Blue Cross Blue Shield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006).  Under controlling Tenth Circuit law, Plaintiffs are required, at a minimum, to set forth the "who, what, when, where, and how of the alleged fraud." *Id.* at 727.

With respect to the particularity requirement under Rule 9(b), Plaintiffs rely on the recent

Tenth Circuit decision in *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 2010 WL 3025021 (10th Cir. 2010). In *Lemmon*, the court stated that "claims under the FCA need only show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *Id.* at *7.

Plaintiffs argue that they have pled the underlying scheme in which Defendants were engaged and which led to the submission of fraudulent claims to the government. Plaintiffs have alleged that Defendants Drury and Maher instructed employees how to circumvent the SBA and that Defendants worked with a specific loan officer to submit falsified documents to the SBA. The Complaint also describes a two-document closing system used by Defendants to get around SBA requirements. The system was allegedly used in at least one specific deal known as the Ink Jet deal. The Complaint further describes an allegedly fraudulent deal known as the Heber Ranch deal that involved fraudulent financial information. Plaintiffs claim that these allegations are sufficient to allow Defendants to formulate a meaningful answer to the claims.

The *Lemon* case, however, explains the exactitude with which Plaintiffs must plead an FCA claim. Plaintiffs in this case have not pled their FCA claim with anything approaching the specificity described by the *Lemon* court. They have failed to provide the who, what, when, where, and how of the alleged fraud. They have failed to provide details concerning the dates of the claims, the content of the fraud, and the amount of money in which the government was defrauded. Plaintiffs in this matter have alleged a scheme in general terms but have stated few specific allegations regarding the scheme. To survive a motion to dismiss under Rule 9(b) standards, more detail is required as to the particular nature of the allegedly fraudulent conduct. Moreover, the court does not read the Tenth Circuit's *Sikkenga* opinion as relaxing the

heightened pleading standard when plaintiffs are not in possession of documents. Because the court concludes that Plaintiffs have not met Rule 9(b) standards, the court will grant Plaintiffs sixty days to file an amended complaint containing the requisite specificity.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. Plaintiffs' Sixth Cause of Action is DISMISSED with prejudice. Plaintiffs' Seventh Cause of Action is DISMISSED without prejudice. The court grants Plaintiffs leave to file an Amended Complaint to cure the pleading deficiencies in their Seventh Cause of Action within sixty days from the date of this Order.[1]

DATED this 16th day of December, 2010.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[1] Because the court has granted Plaintiffs leave to amend their complaint, Defendants' request for this court to decline supplemental jurisdiction over the state law causes of action is presently moot.