IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JASON R. ELLSWORTH, and R. GRANT SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED BUSINESS BROKERS OF UTAH, LLC, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09CV353DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. In December 2010, the court dismissed Plaintiffs' claims under the False Claims Act ("FCA") brought in their original Complaint but granted Plaintiffs leave to amend their FCA cause of action. This Motion to Dismiss is fully briefed and neither party has requested a hearing. The court does not believe that a hearing would significantly aid in its determination of this motion. Therefore, the hearing currently scheduled for June 7, 2011, at 3:00 p.m. is vacated. Having fully considered the motion, memoranda, and other materials submitted by the parties and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Because this is a second motion to dismiss, the court takes the following statement of

facts from the Plaintiffs' Amended Complaint. Plaintiff Jason Ellsworth worked for Defendants from August 2005 to September 1, 2008 as a Research Analyst under the terms of an employment agreement. In a letter dated September 1, 2008, Michael Drury, a principal of Defendants, terminated Ellsworth's employment on behalf of UBB Inc., UMA1, UMA LLC, UMA Inc., and UMAC Inc. Ellsworth alleges that he was not paid properly under the terms of the agreement and that he was not notified of the termination properly. Plaintiff Grant Smith also worked for Defendants as a Research Analyst under the terms of an employment agreement. Smith makes similar allegations regarding a breach of the employment agreement.

With respect to their qui tam action, Plaintiffs allege that Defendants instructed employees how to get around SBA requirements. Plaintiffs claim that Defendant Tom Maher's nephew-in-law was a loan officer to whom Maher submitted falsified SBA loan applications. Plaintiffs allege that Maher informed employees that the SBA guidelines "are bogus and don't matter." Plaintiffs assert that when one UBB employee raised concerns about the approach to a particular loan application, Maher responded that what he had done was nothing compared to what he and Defendant Drury did on SBA loans.

Plaintiffs mention three specific deals in which Defendants allegedly presented or submitted false or misleading information to the SBA. In one deal, referred to by Plaintiffs as the Heber Ranch deal, Plaintiffs allege that Defendant Rebecca Phillips presented intentionally misleading financial statements for an SBA loan. The financials for the deal were initially prepared by Ellsworth. But Plaintiffs allege that, prior to the financials being processed, Phillips retrieved the financials and changed the entire packet to manipulate the deal and push it to closing. Before the Heber Ranch deal closed, Defendants allegedly prohibited Ellsworth from

talking to the bank. Plaintiffs allege that Phillips was paid $30,000 for her work on the Heber Ranch deal. Plaintiffs allege that the SBA relied on this false information to approve loans of $500,000 and $450,000 on November 9 and 20, 2006, to enable the sale of the Heber Ranch business.

In another deal, referred to by Plaintiffs as the Ink Jet Art deal, Plaintiffs allege that Defendants presented false or fraudulent claims for payment and distribution of funds to the SBA, which the SBA used to approve loans of $1,612,000 and $25,000 on September 12 and 14, 2006, to enable the Ink Jet Art sale. Plaintiffs also claim that $25,000 was paid to the seller outside of the closing as part of this deal.

In the third deal mentioned by the Plaintiffs, and referred to by them as the Valley Enterprises transaction, Plaintiffs allege that Defendant Maher created and submitted false documents to the SBA. Plaintiffs also allege that the SBA relied on those documents to support loans of $1,300,000 and $200,000 on April 23, 2007, to enable the sale of the Valley Enterprise business.

In both the Ink Jet Art deal and the Valley Enterprises transaction, Plaintiffs claim that Defendants engaged in "two document closings," in which two sets of documents were prepared to close the deals. Allegedly, one set was to satisfy the SBA and the other set was to reflect the actual closing of the deal.

Plaintiffs allege more generally that Phillips prepared and issued financial statements for companies in transactions from which she received financial benefit contingent upon United consummating a sale of the company. Phillips allegedly prepared these financial statements from an entity named "Phillips Company" in an effort to appear outside of United Business

3

Brokers/United Mergers & Acquisitions.

Furthermore, Plaintiffs claim that Phillips asked Ellsworth to forge or falsify information on numerous occasions, but he refused. Drury informed Plaintiffs that falsifying records is just part of the deal making process and everyone did it. Plaintiffs allege that Defendants routinely misrepresented information to the SBA, presented false or fraudulent claims for payment and distribution of funds to the SBA, and knowingly made and used false records or statements to get SBA funds.

Smith asserts that Drury and Phillips asked him to study corporate record keeping requirements in order to reproduce necessary documents as if they had been created at various times in the past. In one case, Defendants' client engaged legal counsel to produce a "catch-up" document for all corporate actions of the past ten years. Drury and Phillips discarded this catch-up document and instead created false records with false dates for the client to sign. In creating these false documents, Defendants attempted to find paper that closely resembled that of authentic corporate records, so the records looked consistent. Defendants also created stock certificates and ledgers to appear as though they had been kept current by the subject company.

For one transaction, Drury and Phillips expressed dissatisfaction with Smith's work because he was not a team player and because he tried to ruin a deal with a request for indemnification. Smith was only paid a commission of $10,000 for the transaction whereas members of the team had been promised that nobody would make less than $100,000 when the deal closed. The other team members received commissions of between $60,000 and $300,000.

After Plaintiffs' filed their Verified Complaint, Defendants submitted a Motion to Dismiss the Sixth and Seventh Causes of Action. The court granted the motion with prejudice for

the Sixth Cause of Action but without prejudice for the Seventh Cause of Action, the qui tam action. Plaintiffs submitted an Amended Complaint, which is now being challenged under Defendants' present Motion to Dismiss.

## DISCUSSION

Defendants move to dismiss Plaintiffs Jason R. Ellsworth and R. Grant Smith's Seventh Cause of Action in their Amended Complaint, entitled "False Claims Act – Qui Tam." Because that cause of action is the only federal cause of action remaining, Defendants also ask the court to decline to exercise supplemental jurisdiction over the remaining state law causes of action and to dismiss those causes of action without prejudice.

### I. SEVENTH CAUSE OF ACTION

Plaintiffs' Seventh Cause of Action is a qui tam action under the FCA. Defendants argue that the Plaintiffs failed to plead their claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Because FCA claims involve averments of fraud, they are held to the heightened pleading standards in Rule 9(b). *United States ex rel. Sikkenga v. Regence Blue Cross Blue Shield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). Under controlling Tenth Circuit law, Plaintiffs are required, at a minimum, to set forth the "who, what, when, where, and how of the alleged fraud." *Id.* at 727.

Plaintiffs' original Verified Complaint fell short of the heightened pleading standard of Rule 9(b). The court's Memorandum Decision and Order, granting Defendants' first Motion to Dismiss the FCA cause of action in the original Verified Complaint, specifically mentioned information that the Plaintiffs failed to provide as part of their FCA claim. That decision stated that Plaintiffs "failed to provide the who, what, when, where, and how of the alleged fraud" and

5

"failed to provide details concerning the dates of the claims, the content of the fraud, and the amount of money in which the government was defrauded." This court additionally informed the Plaintiffs that they needed "specific allegations regarding the [fraudulent] scheme" and that "more detail is required as to the particular nature of the allegedly fraudulent conduct." Although Plaintiffs, in their Amended Complaint, remedied some of these shortcomings by providing the dates of transactions and the amounts of money in which the government was defrauded, Plaintiffs' Amended Complaint still fails to meet the heightened pleading standards in Rule 9(b).

The language of Rule 9(b) specifically states that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened standard has been interpreted "to require plaintiffs to identify the time, place, content, and consequences of the fraudulent conduct." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010). This standard requires "well-pleaded facts," which are more than simply "conclusory allegations." *Sikkenga*, 472 F.3d at 727. Therefore, in order to meet the heightened standard of Rule 9(b), Plaintiffs must provide details regarding *how* the alleged conduct was fraudulent and the *content* of the fraudulent conduct, beyond mere conclusory allegations.[1]

Although Plaintiffs added additional detail, they have not sufficiently detailed how the alleged claims were fraudulent or the content of the fraudulent conduct. For example, Plaintiffs' repeated references to "two-document closings" fail to specify how the content of the documents submitted to the SBA were fraudulent or why two-document closings are inherently fraudulent.

---

[1] In *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, the Tenth Circuit described a complaint that did provide sufficient detail regarding how the alleged conduct was fraudulent as including "the conduct that led to the violation, the *reason the result constituted a violation*, and a description of the effect of the violation." 614 F.3d 1163, 1171 (10th Cir. 2010) (emphasis added).

Plaintiffs also refer to "falsifying financial statements," "false applications," "false or fraudulent claims," "false records," and "false documents"; but at no point in their Amended Complaint do Plaintiffs either discuss how the statements, applications, claims, records, or documents were fraudulent or describe their fraudulent content. Although the Amended Complaint implies that the Defendants received loans for deals that did not meet SBA guidelines, Plaintiffs fail to provide information regarding the SBA guidelines that were not met in any of the deals. Plaintiffs could potentially show that fraudulent conduct was occurring in the "two document closings" by providing details demonstrating the fraudulent nature of the transaction, by providing the SBA guidelines that those details violated, and by showing that the SBA still approved loans for those transactions. However, simply stating that the Defendants received loans from the SBA in specific amounts for specific deals involving multiple documents is not sufficient to imply fraud since those details do not show either how the conduct was fraudulent or fraudulent content within that conduct. In other words, rather than using conclusory statements that the financial representations were fraudulent, the court needs details showing how the representations were fraudulent.

Plaintiffs again rely on the Tenth Circuit's *Sikkenga* opinion to establish a relaxed heightened pleading standard when defendants have sole control of relevant information. In those situations, the Tenth Circuit still does not allow claims of fraud to be based on "speculation and conclusory allegations." *Sikkenga*, 472 F.3d at 728. Simply alleging a conclusion that conduct was fraudulent is not sufficient even when defendants have sole control of many of the relevant documents. Plaintiffs are still required to provide some detail as to how the conduct was fraudulent and as to the content of the fraudulent conduct. Because Plaintiffs' Amended

Complaint falls short of the required standard, the court dismisses the Plaintiffs' Amended Complaint.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED. Plaintiffs' Seventh Cause of Action is DISMISSED without prejudice. The court grants Plaintiffs leave to file a Second Amended Complaint to cure the pleading deficiencies in their Seventh Cause of Action within forty-five days from the date of this Order.[2]

DATED this 16th day of May, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[2] Because the court has granted Plaintiffs leave to amend their complaint, Defendants' request for this court to decline supplemental jurisdiction over the state law causes of action is presently moot.